# KATSKY | KORINS LLP

605 Third Avenue New York, NY 10158  PHONE 212.953.6000  FAX 212.953.6899  www.katskykorins.com

WRITER'S DIRECT DIAL | 212.716.3293
WRITER'S DIRECT FAX | 212.202.6071
WRITER'S EMAIL | dwalfish@katskykorins.com

*[Handwritten annotation: forthwith serve this Order on Petitioners]*

August 6, 2025

*[Handwritten annotation: Petitioner shall respond by August 8, 2025 at 2PM. Respondents shall* ✗ *SO ORDERED /s/ PKC USDJ 8-6-25 4:59PM]*

**VIA ECF**

Hon. P. Kevin Castel, U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: *Peter Schiff v. Qenta Inc. et al.*, No. 25 Civ. 6426 (PKC)

Dear Judge Castel:

This firm represents the three Respondents (collectively, "Qenta") in the above-captioned action, which earlier today was assigned to Your Honor following its removal yesterday from state court by Qenta on the basis of diversity of citizenship (the amount in controversy is at least $50 million).[1]

Petitioner Peter Schiff commenced this action on July 30, 2025 as a CPLR 7502(c) special proceeding seeking a preliminary injunction in aid of arbitration. On the afternoon of Friday, August 1, the state court entered an *ex parte* temporary restraining order ("TRO") without notice to, or any appearance by, Qenta, and without the showing of "significant prejudice" required by the rules of the state court.[2] The TRO is attached as Exhibit 1 hereto.[3] The TRO is preventing Respondents from taking actions that are in the interest of third parties. Respondents respectfully request that this Court, as the first order of business in this case, vacate the TRO.

By way of background, Petitioner is the sole shareholder of a failed Puerto Rican International Financial Entity named Euro Pacific Intl. Bank, Inc. ("EPB"). (Although the word

---

[1] Citizenship information is set forth in the Notice of Removal and in Respondents' Fed. R. Civ. P. 7.1 disclosure statement.

[2] *See* Rules of the Commercial Division of the Supreme Court, 22 N.Y.C.R.R. § 202.70, Rule 20 ("Temporary Restraining Orders. Unless the moving party can demonstrate that there will be significant prejudice by reason of giving notice, a temporary restraining order **will not be issued** *ex parte*." (emphasis added)); *accord* 22 N.Y.C.R.R. § 202.8-e.

[3] The TRO was docketed as page 173 of Dkt. 1-1. Respondents are in the process of preparing courtesy hard copies of Dkt. 1 and 1-1 (the removal and state court filings) in tabbed format.

Hon. P. Kevin Castel
August 6, 2025
Page 2 of 3

"bank" is in EPB's name, it is not a traditional bank and is not regulated as one.) EPB offered various financial products to its investors, referred to as customers. In 2022, the Puerto Rican financial regulator (known as "OCIF," for Oficina del Comisionado de Instituciones Financieras) ousted Petitioner from his executive role at EPB, and EPB was placed into liquidation proceedings under the oversight of a Trustee whom Respondents understand to be the authorized legal representative of EPB. Neither EPB nor the Trustee is a party to these proceedings.

On September 30, 2022, EPB, Petitioner, and Qenta entered into a Purchase and Assumption Agreement ("Agreement") under which Qenta agreed to assume from the failed financial enterprise certain liabilities (namely, balances of customers choosing to "opt in" to the transfer) and corresponding assets (mainly cash, metals, and some securities in a total amount equal to the assumed liabilities). Some customers, referred to as "opt outs," opted not to be transferred to Qenta. The "opt outs" have chosen instead to make claims on EPB in the official liquidation proceedings overseen by the Trustee.

The transfer of the "opt in" liabilities and corresponding assets from EPB to Qenta, and associated reconciliation, has proven to be complex and difficult. Negotiations relating to these transfers are ongoing. Qenta recently sought to terminate the Agreement and return to the Trustee most of the assets under Qenta's control along with the liabilities associated with the "opt in" customers. While the Trustee and Qenta do not dispute that, for purposes of any transfers, assets and liabilities should be valued as of September 30, 2022, the Trustee appears to dispute that Qenta can return any assets and liabilities to the Trustee, suggesting that Qenta should handle the liquidation of "opt in" customers. Petitioner – despite lacking capacity to act for the bank – takes a third position: that Qenta should return all assets to EPB or the Trustee, but at their current valuation. On July 30 Petitioner (i) submitted a request for arbitration with the International Chamber of Commerce (the Agreement contains an arbitration clause) and (ii) commenced this proceeding in aid of arbitration in state court in Westchester County.[4]

In the proceeding now before this Court, Petitioner is seeking an order directing the return of all EPB assets to EPB or the Trustee – relief that, we reiterate, the Trustee himself seems to oppose. Petitioner also sought and obtained, *ex parte*, the TRO, which restrains any transfers or dispositions of "Assets" and restricts Qenta's record-keeping.

A TRO is an extraordinary remedy to begin with, and this one violates every precept of due process reflected in the Federal Rules of Civil Procedure ("Rules"). For instance, the TRO is hopelessly vague. It does not define which "Assets" it applies to, instead at best requiring resort to the Agreement, which is a separate document. *Cf.* Rule 65(d)(1)(C) ("every restraining order must . . . describe in reasonable detail – and not by referring to . . . [an]other document – the act or acts restrained or required.").

---

[4] Petitioner designated New York, New York as the requested seat of arbitration in his filing with the ICC. Given that fact and that the Agreement provides that the situs for arbitration is New York City, pursuant to CPLR 7502(a)(i) and 7502(c), the state-court proceeding should have been filed in New York County, not Westchester County. There was no basis at all to file in Westchester.

Hon. P. Kevin Castel
August 6, 2025
Page 3 of 3

Further, in obtaining the TRO, Petitioner made no serious attempt to demonstrate (nor could he have demonstrated) that "immediate and irreparable injury" would befall anyone, much less the *Petitioner*. *Cf.* Rule 65(b)(1). In fact, the injury runs in the other direction, as the existence of the TRO coupled with its vagueness prevents Qenta from working with the Trustee and the "opt in" customers to resolve their claims. The TRO also does not contain any clear time limit. One of its two paragraphs appears to last "until further order of the court"; the other does not even contain that limitation. *Cf.* Rule 65(b)(2). The state court also did not require an undertaking/security. *Cf.* Rule 65(c). Compounding the irregularities, at no time has Petitioner (so far as we know) sought to serve his petition in the same manner as a summons, as the CPLR requires (*see* CPLR 403(d)), instead sending a series of informal emails (all of them *after* his proposed OSC was on file) to undersigned counsel – who until yesterday was not even retained to appear in this proceeding.

Further, Petitioner is not entitled to the underlying preliminary injunction ("PI") that he seeks in aid of arbitration – requiring dismissal of this proceeding. In a CPLR 7502(c) proceeding such as this, Petitioner must show *both* that, absent the requested PI, an arbitration award "may be rendered ineffectual," CPLR 7502(c), *and* all of the traditional requirements for a PI under CPLR Article 63, namely irreparable harm *to the Petitioner*, likelihood of success on the merits, and the balance of the equities tipping in Petitioner's favor. *E.g.*, *SG Cowen Secs. Corp. v. Messih*, 224 F.3d 79, 81, 83-84 (2d Cir. 2000).

Petitioner cannot satisfy any of these requirements. For irreparable harm, Petitioner has referred only vaguely to supposed threatened reputational harm to *businesses affiliated* with Petitioner (Dkt. 1-1 at 30). Such inchoate supposed harm to third parties not before the court and not party to the Agreement is plainly insufficient for a TRO or indeed any relief here. And Qenta is not *dissipating* assets but rather trying to *marshal* assets for the benefit of customers. Plus Petitioner has no say over what happens to the EPB assets and liabilities and no authority to act for EPB. The Trustee, who does have that authority, is not seeking arbitration. The arbitrators will quickly realize that Petitioner has no arbitrable claim.

We respectfully request that this Court vacate the irregular *ex parte* TRO imposed by the state court. Respondents are available for a conference at the Court's convenience, and expect to be able to submit a full set of papers (explaining why Petitioner is not entitled to any of the relief he seeks and why this action should be dismissed) on or before August 12.

Respectfully submitted,

Daniel R. Walfish

cc (via email): Peter Chema, Esq. (counsel for Petitioner)

Case 1:25-cv-06426-PKC    Document 7    Filed 08/07/25    Page 4 of 5
FILED: WESTCHESTER COUNTY CLERK 08/04/2025 06:56 AM    INDEX NO. 67774/2025
NYSCEF DOC. NO. 27    Case 1:25-cv-06426-PKC    Document 6    Filed 08/06/25    Page 4 of 5    RECEIVED NYSCEF: 08/01/2025

# Exhibit 1

At the IAS Term Part LSJ of
the New York State Supreme Court in
Westchester County at the Courthouse
at 111 Dr. Martin Luther King, Jr. Blvd.
White Plains on August 1, 2025

Present: Hon. Linda S. Jamieson, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------------X

PETER SCHIFF,    Index No.: 67774/2025
    Petitioner,

- against -

QENTA INC., RESPONSIBLE GOLD TRADING DMCC,
and G-Commerce DMCC
    Respondents.

-----------------------------------------------------------------X

## ORDER TO SHOW CAUSE WITH
## TEMPORARY RESTRAINING ORDER

Upon the Verified Petition of Peter Schiff, dated July 29, 2025, the Affirmation of Peter Schiff, dated July 28, 2025, the Memorandum of Law, and the annexed exhibits, and all prior proceedings:

IT IS ORDERED that Respondents Qenta Inc., Responsible Gold Trading DMCC, and G-Commerce DMCC show cause before this Court, at the Supreme Court, County of Westchester – Commercial Division, 111 Dr. Martin Luther King Jr. Blvd., White Plains, New York 10601, on August 6, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, why an order should not be entered:

1. Pursuant to CPLR §§ 7502(c), 6301, and 6313, granting a Preliminary Injunction directing Respondents, their officers, agents, employees, and persons acting in concert, to:

    a. Immediately return all Assets of Euro Pacific International Bank ("EPB") as defined in PAA Section 1.1, including approximately $50 million in precious metals, $19 million in cash, mutual funds, Subsidiary Shares (*e.g.*, Euro Pacific Securities, Inc., Euro Pacific Funds SCC Ltd.), and Assumed Contracts to EPB or its Receiver;

    b. Alternatively, refrain from selling, transferring, encumbering, dissipating, or disposing of such Assets pending arbitration under ICC Rules per PAA Section 8.7;

    c. Provide an immediate accounting of all EPB assets, liabilities, and customer communications, pursuant to CPLR § 3101;

FILED: WESTCHESTER COUNTY CLERK 08/04/2025 06:56 AM
NYSCEF DOC. NO. 27

Case 1:25-cv-06426-PKC   Document 7   Filed 08/07/25   Page 5 of 5
Case 1:25-cv-06426-PKC   Document 6   Filed 08/06/25   Page 5 of 5

INDEX NO. 67774/2025
RECEIVED NYSCEF: 08/01/2025

   d. Return all Records related to the Assets, pursuant to PAA Section 2.2(e);

2. Granting such other relief as the Court deems just and proper.

~~SUFFICIENT CAUSE APPEARING, it based on Respondents' breach of the PAA, by failing~~ to obtain regulatory approvals, retaining assets without ~~legal or equitable~~ title, and risking dissipation through ~~operational failures~~ and affiliate insolvencies, rendering an arbitration ~~award ineffectual; and it is futher~~

SUFFICIENT CAUSE APPEARING, it is ORDERED that, pending the hearing or until further order of this Court, Respondents, their officers, agents, employees and persons acting in concert, are temporarily restrained from selling, transferring, encumbering dissipating, or disposing of any EPB Assets, including approximately $50 million in precious metals, $19 million in cash, mutual funds, Subsidiary Shares, and Assumed Contracts;

ORDERED that, Respondents are prohibited from destroying, concealing, or altering any documents or records related to said Assets.

**TBD** ~~ORDERED that, in the exercise of the Court's discretion pursuant to CPLR § 6313(c), Petitioner is not required to give an undertaking pending the hearing on this order to show cause; or in the alternative, in the event an undertaking is required, Petitioner shall post an undertaking in an amount to be fixed by the Court, but not to exceed $10,000, as a condition to the effectiveness of this Temporary Restraining Order, within five (5) days of entry of this Order.~~

ORDERED that service of this Order, the Verified Petition, Affirmation, Memorandum of Law, and all exhibits shall be made upon Respondents or their counsel by overnight mail and email to legalnotices@qenta.com and to Dan Walfish of Katsky Korins LLP at dwalfish@katskykorins.com, on or before August 2, 2025, which shall be deemed sufficient service.

Dated: White Plains, New York
   August 1, 2025

                SO ORDERED

                */s/ Linda S. Jamieson*
                HON. LINDA S. JAMIESON, J.S.C.