UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
PETER SCHIFF,                                                      :
                                                                   :
                        Petitioner,          :
                                                                   :   25 Civ. 6426 (PKC)
             - against -                               :
                                                                   :
QENTA INC., RESPONSIBLE GOLD TRADING DMCC, :
and G-COMMERCE DMCC,                                               :
                                                                   :
                        Respondents.       :
------------------------------------------------------------------ x

## DECLARATION OF DANIEL WALFISH

Pursuant to 28 U.S.C. § 1746, I, Daniel Walfish, hereby declare as follows:

1.     I am a partner in the law firm Katsky Korins LLP, counsel for Respondents Qenta Inc., Responsible Gold Trading DMCC, and G-Commerce DMCC in this matter. I make this Declaration on personal knowledge and in support of Respondents' requests (1) to dissolve the temporary restraining order imposed by the state court, (2) deny the preliminary injunction sought by Petitioner Peter Schiff, and (3) dismiss this action.

2.     Pursuant to Local Civil Rule 6.1(d), I state that no previous application for similar relief has been made. On August 6, 2025, Respondents submitted a letter to the Court to alert it to the existence of the temporary restraining order ("TRO") that the state court had imposed *ex parte* and indicating Respondents' intention to submit, on or before August 12, 2025, formal papers in support of their request to vacate the TRO. Dkt. 6.

3.     On October 28, 2021, Puerto Rico's Office of the Commissioner of Financial Institutions (in Spanish, Oficina del Comisionado de Instituciones Financieras, or "OCIF") issued a Consent Order against Euro Pacific International Bank, Inc. ("EPB"), a true and correct copy of which is attached as **Exhibit A** hereto.

4. On August 9, 2022, OCIF issued a Consent Order for Liquidation and Dissolution of International Financial Entity (the "Liquidation Order"), a true and correct copy of which is attached hereto as **Exhibit B**.

5. On September 6, 2022, OCIF's Commissioner, the Trustee appointed by OCIF, Wigberto Lugo Mender, and Petitioner signed a Liquidation and Dissolution Plan for EPB ("Plan"), a true and correct copy of which is attached hereto as **Exhibit C**.

6. On July 30, 2025, Petitioner commenced an arbitration with the International Chamber of Commerce, requesting that the arbitration be sited in New York, New York. A true and correct copy of an email from Petitioner to the ICC together with the arbitration commencement papers is attached hereto as **Exhibit D**.

7. On July 29, 2025, Petitioner commenced a special proceeding pursuant to CPLR 7502 with the New York Supreme Court in Westchester County by filing a petition and a proposed order to show cause ("OSC") containing a temporary restraining order ("TRO") (the "State Court Action"). The State Court Action was assigned Index Number 67774/2025.

8. Petitioner gave no advance notice that he was planning to file the proposed OSC or seek a TRO.

9. Instead, Petitioner's counsel Peter Chema sent the undersigned – who had not yet been retained to appear for Qenta in this action and who has never met or spoken with Peter Chema – a series of informal emails on July 30 and 31 *after* the State Court Action and proposed OSC/TRO were on file alerting us to the filings.

10. At some point on Friday, August 1, 2025 the state court, *ex parte*, signed the OSC and granted the TRO sought by Petitioner. The TRO was uploaded to the state court docket at 4:40 p.m. that afternoon. The OSC called for an appearance on Wednesday, August 6 at 10 a.m. True

and correct copies of the state court's OSC and the New York State Case Electronic Filing confirmation showing the time of upload are attached hereto as **Exhibit E** and **Exhibit F**.

11. The OSC and TRO were signed before the undersigned was retained for this action and before Qenta had made any appearance in the state court.

12. The OSC instructed Petitioner to serve the OSC on the undersigned via email and overnight mail no later than August 2, 2025 (a Saturday). Ex. E at 2.

13. Petitioner did not provide any notice to us that the OSC had been signed and the TRO had been entered on August 1, 2025.

14. On Saturday, August 2, 2025 at or about 6:29 p.m. – nearly 26 hours after the TRO was uploaded to the docket – Petitioner emailed the TRO to the undersigned. This email was initially caught in my firm's email systems' spam filter and I did not discover it until Sunday, August 3, 2025. A copy (redacted of irrelevant information) of an automated alert from our firm's email system on Sunday, August 3 showing the original time of Petitioner's email and the fact that it was blocked due to "Spam Policy" is attached hereto as **Exhibit G**. A true and correct copy of Petitioner's August 2, 2025 email (bearing a date of August 3, 2025 reflecting its release from our spam filter on that date) is attached hereto as **Exhibit H**.

15. Petitioner never complied with the provision of the order requiring overnight service on us – despite falsely affirming to the contrary in the state court. On Monday August 4 (two days after the court-ordered deadline), Petitioner sent out a USPS Priority Mail (not FedEx Priority Overnight mail) package that was not received in our offices until Friday, August 8, 2025. Attached hereto as **Exhibit I** is Petitioner's affirmation of service in the state court (falsely stating under penalty of perjury that Petitioner had used " FedEx Priority Overnight," Ex. I at 2 ¶ 3(b)) and **Exhibit J** is a copy of the envelope containing the late-served papers plus tracking information

reflecting that the papers were sent via USPS Priority Mail late in the day on Monday, August 4 from Flint, Michigan, as opposed to overnight mail by Saturday August 2, as ordered.

16. To repeat, thanks to the vagaries of email service and petitioner's non-compliance with the OSC, my firm did not receive anything resembling formal notice of the Friday 4:40 p.m. TRO until the following Sunday – and even at that point Qenta was still in the process of retaining the undersigned for this action.

17. To our knowledge the petition has never been served in the traditional way that a summons would be, for example via personal delivery to an authorized agent.

18. On Tuesday, August 5, 2025, Respondents finalized our retention for this matter and removed the State Court Action to this Court on the basis of diversity jurisdiction. Dkts. 1, 5.

19. On Wednesday, August 6, 2025, Respondents sent a letter to the Court requesting that the improper TRO be lifted and indicating their intention to submit formal papers on August 12, 2025. Dkt. 6.

20. On Thursday, August 7, 2025, the Trustee's counsel sent a letter to the undersigned, a true and correct copy of which is attached hereto as **Exhibit K**.

21. In obtaining the TRO, Schiff and his counsel have referred to the unrelated action pending in state court captioned *Offshore Exploration and Production LLC v. De Jong Capital, LLC*, Index No. 653659/2021 (Sup. Ct. N.Y. County) (the "OEP Litigation"). Affirmation of Plaintiff Peter Schiff in Support of Motion for TRO (Dkt 1-1 at 18) ¶ 27. The OEP litigation, in which I am lead counsel for the sole defendant, Respondents' parent De Jong Capital, LLC ("DJC"), has nothing to do with Qenta or EPB, and there has been no finding of liability in it. On the contrary, the Appellate Division, First Department, affirmed a trial court decision *dismissing* the plaintiff's main claims and *limiting* the damages the plaintiff can obtain if it prevails. 225

A.D.3d 427 (1st Dep't 2024). The trial-court decision appended to Schiff's affirmation as Exhibit 18 (Dkt 1-1 at 101) is a pleading-stage ruling on a motion to dismiss pursuant to CPLR 3211(a), the state-court equivalent to Rule 12(b)(6).

22. The OEP Litigation is currently in the midst of summary judgment motion practice. DJC has denied liability and also asserted that the plaintiff's maximum compensatory damages award even if it could prevail on any of its claims is $11,503. Statement Pursuant to Commercial Division Rule 19-a, *Offshore Exploration and Production LLC v. De Jong Capital, LLC*, Index No. 653659/2021 (Sup. Ct. N.Y. County June 23, 2025) (Dkt. 380) ¶¶ 137-42.

23. Plaintiff claims in its own summary judgment papers that it is entitled to those damages and another $60,000 of compensatory damages, for a grand total of $71,503 in compensatory damages. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment, *Offshore Exploration and Production LLC v. De Jong Capital, LLC*, Index No. 653659/2021 (Sup. Ct. N.Y. County July 28, 2025) (Dkt. 588) ¶ 39. Plaintiff also seeks punitive damages; these are capped under Texas law, which governs the applicable claims (*see* Dkt. 1-1 at 109), at $200,000. Tex. Civ. Prac. & Rem. § 41.008(b).

I declare under penalty of perjury that the foregoing is true and correct.

Date: August 12, 2025

                                                      /s/ *Daniel Walfish*
                                                        Daniel Walfish